UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEE JASON KIBLER,

     Plaintiff,

v.

ROBERT BRYSON HALL, II, ET AL.,

     Defendants.

_____/

Case No. 14-10017

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
[81, 83, 85]**

On May 27, 2015, all defendants moved for summary judgment on Plaintiff's trademark infringement, trademark dilution, and related claims. Defendant UMG Recordings d/b/a Def Jam Recordings (Def Jam) filed a Motion for Summary Judgment [Dkt. #81] along with a supporting Affidavit [82]. Defendant William Morris Endeavor Entertainment (WME) also filed a Motion for Summary Judgment [83] with a supporting Declaration [84]. Likewise, Defendants Hall, Team Visionary Music Group, and Three Oh One Productions (the Hall Defendants) filed a Motion for Summary Judgment [85] and supporting

Declarations [86, 87].  Plaintiff filed Responses [88, 89, 90] on June 17, 2015, along with supporting Exhibits [91, 92].  On July 1, 2015, Defendant Def Jam filed a Reply [93] and supporting Declaration [94].  The same day, Defendant WME filed its own Reply [95], as did the Hall Defendants [96].  After a hearing held on October 30, 2015, the Court took the motions under advisement.

For the reasons stated below, Defendants' Motions for Summary Judgment [81, 83, 85] are **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Kibler is a DJ and turntablist (a musician specializing in the use of a turntable and DJ mixer) who has worked under the name DJ Logic since 1999.  He does not rap or sing, although he sometimes collaborates with vocal performers. He released albums under the name DJ Logic in 1999, 2001, and 2006, and has participated as DJ Logic on other albums.  He currently has no record deal.  He registered "DJ Logic" as a trademark in 2000, but inadvertently allowed the registration to lapse some years later.  He re-registered the DJ Logic trademark on July 23, 2013.

Defendant Hall is a rapper who began using the stage name Logic in 2009 (he previously used the stage name Psychological).  Defendant Three Oh One is Hall's personal company.  Defendant Team Visionary Music Group is Defendant

Hall's management.   Defendant Def Jam is Defendant Hall's record label. Defendant WME is a booking agent that assists Hall and his management in arranging Hall's public appearances.   In September 2012, Plaintiff's counsel sent Defendants Team Visionary and WME an e-mail demanding that they and Defendant Hall stop using the stage name Logic in violation of Plaintiff's DJ Logic trademark.   Subsequently, Defendant Three Oh One applied to register Logic as a trademark.

Plaintiff filed the Complaint in this matter on January 3, 2014, and a Motion for Preliminary Injunction [14] on February 27, 2014.   At the time, Hall was scheduled to release his first album and go on tour in April 2014.   The parties appeared for oral argument on March 28, 2014, but instead participated in a settlement conference.   The relevant defendants agreed to postpone the album release and tour pending further settlement efforts, which were unsuccessful.   The Court held a hearing on July 21, 2014, and denied the motion for preliminary injunction.  Def Jam released Hall's first album on October 21, 2014.  Defendants moved for summary judgment approximately seven months later.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## I.    Infringement (and Related Claims)

Count One of Plaintiff's complaint alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Counts Three and Four allege a Michigan Consumer Protection Act (MCPA) violation and unfair competition, respectively. The underlying allegations for all three counts are the same. Accordingly, Defendants rely on their trademark infringement arguments to oppose the MCPA and unfair competition claims as well. Plaintiff has made no

attempt to separately argue the MCPA and unfair competition claims. The Court will therefore analyze them together with the trademark infringement claim.

In analyzing a trademark infringement claim under the Lanham Act, the Court must determine whether the plaintiff's mark is protectable and "whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 728 (6th Cir. 2012) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005)). Here, the parties do not dispute that Plaintiff's "DJ Logic" mark is protectable. To determine whether there is a likelihood of confusion, courts in the Sixth Circuit weigh the following "*Frisch* factors:"

> 1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines.

*Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 679 F.3d 410, 419 (6th Cir. 2012) (quoting *Frisch's Rests., Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)). The relevance of each factor varies case by case, but the central question in applying the factors is always "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir.

5

2002) (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).

### 1.      Strength of Plaintiff's Mark

This factor favors Defendants.   The factor concerns both the mark's "conceptual strength," or its inherent distinctiveness, and its "commercial strength," or its recognition in the market. *Maker's Mark*, 679 F.3d at 419 (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11.83 (4th ed.)).   The parties seem to agree that "Logic" is strong conceptually, since it is "arbitrary" (i.e., not descriptive or even suggestive of the characteristics of Plaintiff's music).   On the other hand, the "DJ" portion of Plaintiff's mark is descriptive or at least suggestive of Plaintiff's emphasis on the use of turntables and a DJ mixer.   Overall, the "DJ Logic" mark is moderately strong conceptually.

However, the Sixth Circuit has recognized that "a mark can be inherently distinctive but not especially strong if it fails to attain broad public recognition." *Maker's Mark*, 679 F.3d at 419 (citing *Therma-Scan*, 295 F.3d at 631–32). Plaintiff has produced no survey evidence showing consumer recognition of his mark.   Likewise, he has produced no evidence concerning the marketing of his albums.   Plaintiff has sold less than 300 albums over the past three years and less than 60,000 since release of his first album sixteen years ago.   He currently has no

6

recording contract, and his past recording contracts were not with a major label. In sum, the evidence shows that Plaintiff's mark has little commercial strength.

Furthermore, the strength of Plaintiff's mark is reduced by third-party use of similar marks. *See Homeowners*, 931 F.2d at 1108 (holding that evidence of third-party use of marks consisting of or containing the same initials used in plaintiff's mark should have been considered in assessing the strength of plaintiff's mark). Defendants have identified various musicians who, like Plaintiff, market music online under a name incorporating "logic" or a variation thereof—some of whom also incorporate "DJ" into their name.

In sum, Plaintiff's mark is moderately strong conceptually but commercially weak. The Court concludes that this factor favors Defendants.

### 2.      Relatedness of the Parties' Goods or Services

This factor is neutral. The parties' goods and services are somewhat related in that they both perform as musicians and sell recorded music. Relatedness at this level of generality, however, does little or nothing to suggest that consumers will confuse the parties. *See Homeowners*, 931 F.2d at 1109 (acknowledging that coexistence in the same broad industry does not render services "related"). When the parties' goods and services are looked at more closely, distinctions quickly emerge—perhaps most notably, Defendant Hall is a vocal performer and Plaintiff

is not.  The Court concludes that the parties' goods and services are "somewhat related but not competitive, so that likelihood of confusion may or may not result depending on other factors." *Id.* at 1108.

### 3.      Similarity of the Marks

This factor favors Defendants.  It is true that both marks prominently feature the word "logic."  However, the Sixth Circuit has "endorsed the 'anti-dissection rule,' which serves to remind courts not to focus only on the prominent features of the mark, or only on those features that are prominent for purposes of the litigation, but on the mark in its totality." *Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419, 423 (6th Cir. 1999) (citing *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571–72 (6th Cir. 1987) (holding "Pizza Caesar USA" and "Little Caesars" to be dissimilar despite both prominently featuring "Caesar")). Considered in its totality, the "DJ Logic" mark is significantly distinct from Defendant Hall's "Logic" mark.  The "DJ" portion not only changes the look and sound of the mark but also describes or suggests certain characteristics of Plaintiff's music.

### 4.      Evidence of Actual Confusion

Plaintiff has identified at least ten instances in which people appear to have confused Logic with DJ Logic, or vice versa.  Accordingly, this factor favors

Plaintiff.   *Therma-Scan*, 295 F.3d at 635 ("[I]n the context of a motion for summary judgment, any evidence of confusion, regardless of how minimal, weighs in [the plaintiff's] favor.").

On the other hand, "the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists." *Id.* at 636 (quoting *Homeowners*, 931 F.2d at 1110). Defendants argue that the incidents identified by Plaintiff are only a "handful" in the context of Defendant Hall's sales—he sold 170,000 copies of his first album in the seven months between its release and the summary judgment briefing—and popularity on Internet sites such as YouTube, Facebook, and Twitter. Defendants also challenge the weight that should be given to particular incidents of confusion. For instance, they claim that various news postings that confused Logic with DJ Logic all came from the same source and that the error was likely the result of computer error rather than actual (human) confusion.

The Court does not find Plaintiff's evidence of actual confusion to be particularly strong. Nevertheless, it provides some support for Plaintiff at this stage of the case.

### 5.    Marketing Channels Used

Plaintiff has not produced evidence concerning his marketing efforts.  At the hearing, Plaintiff's counsel pointed out that both Plaintiff and Defendants sell music online and promote themselves via Internet social media.  To determine whether parties' use of the Internet for marketing constitutes overlapping marketing channels, "the relevant questions include : (1) whether both parties use the Web as a *substantial* marketing and advertising channel, (2) whether the parties' marks are utilized in conjunction with Web-based products, and (3) whether the parties' marketing channels overlap in any other way." *Therma-Scan*, 295 F.3d at 637 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)).  Plaintiff's evidence does not support an affirmative answer to any of these three questions.  On the other hand, Defendants have not produced evidence showing that their marketing efforts are so distinct as to weigh against the likelihood of confusion.  The Court finds the factor neutral.

### 6.    Likely Degree of Purchaser Care

The degree of care exercised by music consumers is likely to vary greatly depending on the type of transaction (e.g., purchasing one song on iTunes or purchasing an expensive concert ticket) and the characteristics of the consumer (e.g., a turntabling aficionado or a casual fan of rap).  The Court finds this factor

unhelpful on the present facts. *See Daddy's Junk Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 285 (6th Cir. 1997) (citing *Little Caesar*, 834 F.2d at 572).

### 7.    Intent in Selecting the Mark

There is no evidence that Defendant Hall intentionally chose the stage name Logic to infringe Plaintiff's mark. Accordingly, this factor is neutral. *Therma-Scan*, 295 F.3d at 639 ("This factor, rather than tilting the balance in either direction, does not carry significant weight if no evidence of intentional infringement exists.").

### 8.    Likelihood of Expansion of the Parties' Markets

It appears unlikely that the parties will expand their markets to put them in competition. Accordingly, this factor is neutral. *See Therma-Scan*, 295 F.3d at 639.

### Balance of Factors

In the Court's estimation, the *Frisch* balancing inquiry in this case boils down to weighing Plaintiff's evidence of actual confusion, which supports Plaintiff, against the strength of Plaintiff's mark and its similarity to Defendant Hall's mark, which support Defendants. Because Plaintiff's evidence of actual confusion does not exceed a handful of instances in the context of the parties'

11

careers, the Court holds it insufficient to overcome the overall weakness of Plaintiff's mark, its dissimilarity from Defendant Hall's mark, and the lack of support from other factors. In other words, the Court holds that Plaintiff has raised no genuine issue of material fact regarding a likelihood of confusion. The Court therefore grants Defendants summary judgment on Plaintiff's trademark infringement and related claims.

## II.     Dilution

Plaintiff alleges trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c). That subsection provides as follows:

> Subject to the principles of equity, the owner of a *famous* mark that is distinctive … shall be entitled to an injunction against another person who, at any time after the owner's mark has become *famous*, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the *famous* mark.

15 U.S.C. § 1125(c)(1) (emphasis added). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). Courts have recognized that the "famous" requirement is difficult to meet. *See, e.g.*, *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("[A] famous mark is one that has become a 'household name.'") (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir.

12

2004)); *Quicken Loans, Inc. v. Nationwide Biweekly Admin., Inc.*, No. 13-13431, 2014 WL 505576, at *6 (E.D. Mich. Feb. 7, 2014) (unpublished) (finding dilution claim unlikely to succeed on the merits because the Quicken Loans mark, despite enjoying "niche fame," likely was not "famous").   The Sixth Circuit has recognized Audi and Victoria's Secret as "famous" marks.  *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006); *V Secret Catalogue, Inc. v. Moseley*, 605 F.3d 382, 387 (6th Cir. 2010).

Plaintiff's dilution claim fails because no reasonable jury could find his "DJ Logic" mark "famous" within the meaning of the Lanham Act.  As discussed above, the evidence shows that the mark has little commercial strength.  It is not a household name, and its recognition is far from comparable to that of Audi or Victoria's Secret.  In short, Plaintiff has produced no evidence that would enable a reasonable jury to conclude that DJ Logic is "*widely* recognized by the *general consuming public* of the United States" as a sign that Plaintiff is the source of the relevant goods or services.   15 U.S.C. § 1125(c)(2)(A) (emphasis added). Accordingly, the Court grants Defendants summary judgment on the dilution claim.

## CONCLUSION

For the reasons stated above, there are no genuine issues of material fact on the merits of Plaintiff's claims. This conclusion renders it unnecessary to resolve other issues raised by Defendants; the Court therefore declines to do so. Accordingly,

**IT IS ORDERED** that Defendants' Motions for Summary Judgment [81, 83, 85] are **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: November 9, 2015        Senior United States District Judge

14